GERRY W. COLGROVE, as Administrator, etc., of ARION MASON, Deceased, Appellant, Impleaded with ELLIE BROWNELL, as Administratrix, etc., of GEORGE G. BROWNELL, Deceased, Plaintiff, *v.* BESSIE A. SMITH, Respondent.

Fourth Department, December 18, 1928.

*Jackson, Herrick, Durkin & Leet* [*Gerald A. Herrick* and *Benjamin S. Dean* of counsel], for the appellant.

*Phillips & Skinner* [*McKinley L. Phillips* and *Frank H. Mott* of counsel], for the respondent.

SAWYER, J.   George G. Brownell was a real estate broker in the city of Jamestown.   In connection with his business he also bought and sold securities for clients, collected interest, rents, etc.

Arion Mason, in his lifetime, was a client of Mr. Brownell and at the time of his death at least five mortgages belonging to him were in Mr. Brownell's keeping, one of them being the Clovis M. Sharp mortgage originally given for $1,500.   The physical possession of these bonds and mortgages remained with Mr. Brownell after Mr. Mason's death and he from time to time sold some of them for Mr. Colgrove, who was Mr. Mason's administrator.   Each of these sales was under specific authority from Mr. Colgrove.   No general authority to sell was given.   At the time of the transaction here involved, the Sharp mortgage had been paid down to $825, as of March 28, 1926, $100 of such payment, together with one year's interest, being in the possession of Mr. Brownell.

Defendant Bessie A. Smith resided at Salamanca, N. Y.; she had a very slight acquaintance with Mr. Brownell, arising out of the fact that he had upon some occasions received and remitted to her the interest due on a bond and mortgage which she owned. June 14, 1926, in an interview at his office, Mrs. Smith told Mr. Brownell that she had $1,800 to invest and probably inquired whether he knew of a suitable mortgage that she could procure. He told her that he had the Arion Mason mortgages for sale but did not mention to her any particular one.

July eighth following, Brownell wrote Mrs. Smith the following letter:

" Mrs. B. A. SMITH,
          " Salamanca, N. Y.

     " Dear Mrs. SMITH — I have a chance to place your $1800 on two first mortgages here in the city.

     " One of them is a Mason mortgage and the other is from another client that I have had.

     " I consider these both A-1, and would say that if you want me to take them over for you kindly send me a check for $1800.
                              " Yours very truly,
" GGB / M                              GEO. G. BROWNELL."

Responding to this letter, Mrs. Smith on July twelfth sent two checks, aggregating $1,800, to Mr. Brownell, unquestionably intending that with their proceeds he should purchase for her the two mortgages mentioned in his letter.   Instead of doing that and procuring them to be assigned to her, Mr. Brownell forthwith appropriated the $1,800 to his own use by depositing the same in his personal bank account and checking it out for his individual purposes.

On July twenty-second, some nine days after receiving the money from Mrs. Smith, Brownell wrote to the plaintiff Colgrove, who resided at Dewittville in Chautauqua county, the following letter:

"Mr. GERRY W. COLGROVE,
"Dewittville, N. Y.:
"Dear Mr. COLGROVE — I am inclosing check to cover the principal and interest on the Alfred Josephson mortgage.

"Also make an assignment of the mortgage of Louis and Hazel Bloom. This mortgage was made by Clovis M. Sharp and Minnie Sharp — my number five.

"Have assignment read 'principal of $825.00 and interest from March 28th, 1926. I have in my hands $100 of principal and interest for one year, this makes it agree with statement I sent you.

"Assignment to read Bessie A. Smith, Salamanca, N. Y. and send down with papers and *I will get it taken over.* [Italics mine.]
"Yours very truly,
"GEO. G. BROWNELL."

The Josephson mortgage referred to in this letter seems to have been one of the Mason mortgages that had been sold by Mr. Brownell for Mr. Colgrove as administrator. He remitted for same by his individual check upon the same account in which he had deposited Mrs. Smith's money, but for which the account would have been insufficient to meet this check. It is a fair inference that he had previously used the proceeds of this mortgage and appropriated Mrs. Smith's money to replace it. Two or three days later, not having received the assignment as suggested in the letter, Mr. Brownell called Mr. Colgrove over the telephone and asked him to send the assignment down that day " as Mrs. Smith was to be in his office and was wanting it." (Mrs. Smith was not at his office and had no expectation of going there.) Thereupon Mr. Colgrove forwarded the assignment of the mortgage, which had been made and executed upon the twenty-third, to him.

The unmistakable inference from these two transactions is: (a) That the $1,800 was delivered to Brownell by Mrs. Smith to be invested by him for her in two mortgages, one of which was the Mason mortgage, amount not stated; (b) that the assignment of the Sharp mortgage was delivered to him by Mr. Colgrove solely for delivery to Mrs. Smith upon the receipt from her of the sum of $825 and interest, which sum, together with the $100 then in Mr. Brownell's hands, was to be remitted to Mr. Colgrove. There was no intention on the part of plaintiff that it should be used to

repay her for moneys already misappropriated nor to cover up any defalcation.

Brownell never sent the mortgage to Mrs. Smith, neither did he ever remit to Mr. Colgrove therefor. As has been seen, he had appropriated to his own use Mrs. Smith's money before the assignment was sent to him for delivery. He was, therefore, unable to exercise the special authority given him by Mr. Colgrove for he had none of Mrs. Smith's money with which to effectuate the delivery to her of the mortgage. Accordingly he did nothing and in the following month of October he died. The papers relating to this Mason mortgage (including the assignment to Mrs. Smith) were retained by him until his death and are now in the possession of Mr. Brownell's administratrix. The court is asked to say to whom they belong. Plaintiff Colgrove demands that they be returned to him. Mrs. Smith, on the other hand, insists that they should be delivered to her as being a part of the investment of $1,800 Brownell was authorized to make for her.

The court below has held, in substance, that, as between the two, Mr. Brownell is presumed to have accepted the assignment for Mrs. Smith and to have delivered it to himself for her, in accordance with the agency conferred upon him for that purpose, and has given her a judgment accordingly.

We are not in accord with that conclusion. It boils down to this — Mrs. Smith intrusted him with $1,800 to invest in mortgages for her, one of which was to be a Mason mortgage, the exact description and amount of which she had no knowledge and did not specify. Later he procured from plaintiff Colgrove, as executor of Mason, an assignment of this $825 mortgage under the agreement, partially expressed and partially implied, that it was to be delivered to Mrs. Smith upon receipt from her of that sum and interest which he would pay over to plaintiff. He never, as agent for Mrs. Smith, invested her money in the Mason mortgage or in any other mortgage; on the contrary, he spent it for his own purposes. He never, as agent for Mr. Colgrove, delivered the bond, mortgage and assignment to Mrs. Smith personally nor did he deliver it to himself as agent for Mrs. Smith, because he had no money in his possession belonging to her with which to take it over. He cannot, by a fiction, be said to have turned it over from himself as agent for Colgrove to himself as agent for Mrs. Smith, unless he was in position to carry out both agencies precisely as authorized.

Let me repeat, he had misappropriated Mrs. Smith's money before the mortgage and its assignment came into his possession and before there was any authority given him to deliver the same to her. He was given possession of the assignment for the express and only

purpose of turning it over to her and concurrently therewith receiving therefor in behalf of Mr. Colgrove, $825 and interest. He did neither. Therefore, it must be held that at the time of his death the bond, mortgage, assignment and search were still in his hands as agent for Mr. Colgrove, undelivered and awaiting delivery to Mrs. Smith — delivery not having been had, Mr. Colgrove is entitled to their return.

The judgment should be reversed on the law and the facts, with costs to appellant, and judgment directed for plaintiff for the return to him of the bond, mortgage, assignment and search, with costs.

All concur, except CLARK, J., who dissents in a memorandum in which EDGCOMB, J., concurs. Present — CLARK, SEARS, TAYLOR, SAWYER and EDGCOMB, JJ.

CLARK, J. (dissenting). I dissent from the report for reversal and vote for affirmance.

On the 22d day of July, 1926, one Brownell, who was the agent in this transaction for Colgrove, representing the Mason estate, wrote to him inclosing a check to cover principal and interest on the Alfred Josephson mortgage. The greater part of this money had come from defendant.

In this same letter Brownell asked Colgrove to make an assignment of the mortgage in question to this defendant Bessie A. Smith, and to send the paper to him and that he would get it taken over.

The next day, July 23, 1926, Mr. Colgrove forwarded to Brownell the Sharp bond and mortgage, which are the subject of this controversy, together with a duly executed assignment thereof, to Bessie A. Smith, this defendant.

Colgrove delivered this bond and mortgage and the assignment to Brownell for the express purpose of delivering them to this defendant, and there were no conditions attached in any way, shape or manner.

When Colgrove sent the bond and mortgage and assignment to Brownell without any conditions or reservations attached, he constituted Brownell his agent with authority and directions to deliver the bond and mortgage and assignment to Mrs. Smith, who had previously left the money with Brownell to pay for the mortgage. Brownell failed to deliver the papers to Mrs. Smith, as he agreed and was authorized by Colgrove to do.

If Brownell never accounted to Colgrove for the moneys received from Mrs. Smith for this bond and mortgage it is Colgrove's misfortune, but Mrs. Smith ought not to be penalized because Col-

grove's agent misappropriated the money and failed to deliver to her papers which Colgrove executed and sent to him for that very purpose.

The judgment should be affirmed, with costs.

EDGCOMB, J., concurs.

Judgment reversed on the law and facts, with costs, and judgment granted in favor of the plaintiff for the relief demanded in the complaint, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.